UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

RAY D. HAMILTON,

  Plaintiff,

v.

PIKE COUNTY, KENTUCKY, et al.,

  Defendants.

Civil No. 11-99-ART

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Ray Hamilton hopes to introduce Madeleine LaMarre as an expert witness. LaMarre's expert report concludes, among other things, that Hamilton's physician, Dr. Waldridge, failed to provide Hamilton proper medical care and caused him serious harm. Four defendants moved to exclude LaMarre's testimony about Dr. Waldridge's standard of care and the medical cause of Hamilton's injuries. As the party seeking to admit LaMarre's testimony, Hamilton bears the burden of proving her testimony is admissible. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). Hamilton has not met his burden. So the defendants' motion *in limine* is granted.

**BACKGROUND**

Ray Hamilton alleges that during his incarceration at the Pike County Detention Center the medical staff ignored his serious medical conditions. He asserts that as a result of their indifference, his conditions worsened and he was rushed to the Pike County Medical Center. There he almost died and developed a drug-resistant

infection. Compl., R. 1 at ¶¶ 9–11. Among other things, Hamilton claims that the medical staff at the jail committed medical malpractice. *Id.* at ¶¶ 16–17. He seeks both compensatory and punitive damages. Id. at ¶¶ 23–24.

To prove a medical malpractice claim in Kentucky, a plaintiff must establish that: (1) his treatment fell below the standard of care a reasonably competent professional would have provided, and (2) the failure to meet the standard of care proximately caused his injury. *See Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 688 (Ky. 2003).

Kentucky generally requires plaintiffs to establish both elements of a medical malpractice claim through expert testimony. *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010) (citation omitted). There are two exceptions. First, expert testimony on causation is not required when a layperson can "conclude from common experience" that the injury in question does not occur when the proper procedures are followed (*res ipsa loquitur*). *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992). Second, expert testimony is not required if the defendant physician makes admissions "of a technical character" that show he did not meet the standard of care. *See id.* (internal quotation marks omitted); *see also Blankenship*, 302 S.W.3d at 670.

Hamilton's expert witness is Madeleine LaMarre, a nurse practitioner licensed in Georgia with a master of nursing degree. R. 44-1 at 1, 5. Hamilton asked LaMarre to provide her opinion on "whether health care services provided to [Hamilton] . . . met the standard of care for his serious medical needs." R. 44-2 at 1. LaMarre reviewed Hamilton's medical records, deposition testimony of Hamilton and his sister, and the 2008 National Commission on Correctional Health Care Standards for

Health Care Services in Jails. *Id.* LaMarre concluded that "to a reasonable degree of medical and/or nursing certainty . . . [the jail medical staff] failed to provide adequate and timely medical care to Mr. Hamilton." *Id.* at 9. She states that Dr. Waldridge, the physician who treated Hamilton, "did not intervene in a timely manner" to ensure Hamilton received treatment. *Id.* Finally, she states that the jail medical staff's actions "nearly cost [Hamilton] his life, and resulted in demonstrable harm and avoidable pain and suffering . . . ." *Id.*

Four of the defendants—the jail's health care services provider, Dr. Waldridge, and two of the jail's nurses—filed a motion *in limine* to limit LaMarre's testimony. R. 44. They wish to exclude her testimony on two issues: 1) Dr. Waldridge's standard of care and 2) whether the medical staff's actions caused Hamilton to become ill and to require hospitalization. R. 44 at 1–3. They argue that because LaMarre is a nurse, not a physician, she is not qualified to offer an opinion in either area. *See id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

## DISCUSSION

When a party's expert witness is challenged, the Court assumes the role of a gatekeeper to ensure that the expert witness's testimony is reliable and relevant. *See Daubert*, 509 U.S. at 597. Under Federal Rule of Evidence 702, which codified the *Daubert* standard, an expert may be qualified through "knowledge, skill, experience, training, or education." If qualified, the expert may testify so long as their knowledge will aid the fact finder and their opinions are based on sufficient data, reliable methods, and the facts of the case. Fed. R. Evid. 702. A district court has

"considerable leeway" in making this determination. *See Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

A district court is not required to hold a *Daubert* hearing when neither party requests one and the Court can perform its gatekeeping function on the basis of the record. *See Nelson*, 243 F.3d at 251 (citing *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999)); *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). Neither party requested a hearing here, and the record is adequate to decide the motion.

### I.    LaMarre may not testify about the standard of care applicable to Dr. Waldridge

The Kentucky courts have not squarely addressed the general question of whether a nurse is competent to testify as an expert on the standard of care for physicians.[1] *See Legg v. Chopra*, 286 F.3d 286, 289–92 (6th Cir. 2002) (explaining that state witness competency rules are substantive and therefore controlling under the *Erie* doctrine). One recent case declined to establish a "blanket rule" in the opposite direction—that is, a rule prohibiting a doctor from testifying as to the standard of care for a nurse. *See Tapp v. Owensboro Med. Health Sys., Inc.*, 282 S.W.3d 336, 340

---

[1] Some states courts bar such testimony. *See Sullivan v. Edward Hosp.*, 806 N.E.2d 645, 660 (Ill. 2004) (holding that a doctor cannot testify to the standard of care for a nurse because, among other reasons, a nurse cannot testify as to the standard of care of a doctor); *Wooley v. State*, 716 N.E.2d 919, 927 (Ind. 1999) (stating general rule that the standard of care for physicians must be established by other physicians); *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 727 (Minn. 2005) (allowing nurse to testify on the nursing standard of care but not the physician standard of care); *see also Waatti v. Marquette Gen. Hosp., Inc.*, 329 N.W.2d 526, 528 (Mich. Ct. App. 1982) (holding that a nurse was not qualified to testify as to an emergency medicine physician's standard of care). Some states forbid such testimony by statute. *See* Ala. Code. § 6-5-548; Ohio R. Evid. 601(D); Tex. Civ. Prac. & Rem. Code § 74.401. But at least one court has suggested nurses may be competent to offer such testimony. *See Avret v. McCormick*, 271 S.E.2d 832, 833 (Ga. 1980).

(Ky. Ct. App. 2009). It did so at least in part because nurses serve at the direction of physicians, so the "physician's area of expertise necessarily encompasses the standard of care applicable to nurses." *Id.* at 341 (quotation omitted). The same cannot be said about nurses, who are usually not permitted to diagnose patients or treat them without orders from a physician. *See id.* Even so, there is no clear per se rule in Kentucky against nurses testifying as to a physician's standard of care.

Because Kentucky law does not bar LaMarre's testimony, the question becomes whether she is qualified to testify about Dr. Waldridge's standard of care in this case. *See* Fed. R. Evid. 702 (an expert may be qualified through "knowledge, skill, experience, training, or education"). LaMarre is a licensed nurse with a master of nursing degree. R. 44-1 at 1, 5. She is a consultant to correctional agencies. In that position, she helps those agencies develop strategies to comply with professional standards and settlement agreements. *Id.* at 1. The last time she practiced nursing was from 2005 to 2007, when she worked with female HIV-positive inmates. *Id.* Before that, she was a nurse practitioner for the Georgia Department of Corrections from 1984 to 1985. *Id.* at 2.

LaMarre is not qualified to offer an expert opinion on the standard of care required in Hamilton's case. Hamilton had a host of medical problems while at the Pike County Detention Center including: alcohol dependency; high blood pressure; hepatitis C; head, neck, and spinal injuries; chronic back pain; a removed spleen; and blood clots. R. 44-2 at 2. It may be possible that a nurse could obtain the "knowledge, skill, experience, training, or education" required to qualify as an expert on the standard of care required of a doctor treating a patient with Hamilton's

5

symptoms. Fed. R. Evid. 702. One can imagine a nurse who specializes in a field (for example cardiology), reads the relevant literature, and works closely with doctors to treat patients on a regular basis. Over time, the nurse might become as qualified to opine on the standard of care her supervising physician must meet as that physician himself. *See, e.g.*, *Savage v. Three Rivers Med. Ctr.*, ___ S.W.3d ___, 2012 WL 5274645, at *9 (Ky. Oct. 25, 2012) (exempting a nurse with "specialized and unique training . . . from the usual rule that nurses will not normally be qualified to present expert testimony requiring the interpretation of an x-ray"). But LaMarre is not that nurse. First, she has not served as a nurse in a clinical setting for over five years, and when she did she dealt with female HIV-positive inmates. It has been over eighteen years since she served as a nurse in a more general setting where she might have encountered patients like Hamilton. Second, Hamilton has a wide range of ailments, and LaMarre has not spent a prolonged period of time specializing in any of them.

In response to the motion, Hamilton does not argue that LaMarre is qualified to testify as to Dr. Waldridge's standard of care. Instead, he argues that Dr. Waldridge admitted he violated the standard of care, so the second exception to the requirement of an expert witness applies. R. 54 at 1–3. But the issue here is not whether Hamilton needs an expert witness to establish the standard of care; it is whether LaMarre is qualified to act as one. Hamilton's silence as to LaMarre's qualifications speaks volumes. LaMarre is certainly qualified in the abstract sense of the word. She has worked in the field of medicine, either as a nurse or as a consultant, for over thirty years. But she is not qualified in the specific sense required here. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir.1994) ("The issue with

6

regard to expert testimony is . . . whether [a witness's] qualifications provide a foundation for a witness to answer a specific question."). She does not have the "knowledge, skill, experience, training, or education" required to offer an expert opinion on the standard of care required of a physician treating a patient in Hamilton's condition. Fed. R. Evid. 702. Therefore LaMarre's testimony as to Dr. Waldridge's standard of care is inadmissible.

## II.     LaMarre may not testify about medical causation.

LaMarre's report states that the medical staff's actions "nearly cost [Hamilton] his life, and resulted in demonstrable harm and avoidable pain and suffering . . . ." R. 44-2 at 9.[2] The defendants argue that as a nurse, LaMarre may not testify as an expert to establish "causation of Plaintiff's alleged medical conditions." R. 44 at 2–3. Hamilton responds that LaMarre's report states only that the medical staff's actions harmed him and nearly cost him his life. The report, according to Hamilton, does not state that the medical staff's actions caused any specific medical condition. R. 54 at 3. The fact that LaMarre stated only the general effect of the defendants' negligence does not mean that she did offer an opinion regarding causation. Quite the opposite. Her statement that the defendants' conduct "nearly cost [Hamilton] his life and resulted in demonstrable harm" is necessarily a claim that their negligence caused his injuries. R. 44-2 at 9. The defendants could not have "cost" Hamilton anything if they were not the cause of his suffering. So LaMarre's opinion on "harm" is also an opinion on causation.

---

[2] LaMarre does not opine on whether the nurses' actions alone caused Hamilton's injuries, but instead refers to the medical staff as a whole.

7

The Kentucky courts also have not directly addressed the question whether a nurse is competent to testify as an expert on causation. One court noted "[a]s an aside" that some courts have held "as a matter of law, that nurses are not qualified to give expert opinion testimony regarding medical causation in medical negligence case." *Rogers v. Integrity Healthcare Servs., Inc.*, 358 S.W.3d 507, 512 & n.4 (Ky. Ct. App. 2012) (finding nurse not qualified to testify as an expert on other grounds). In fact, "the majority rule [is] that nursing experts cannot opine as to medical causation and are unable to establish . . . proximate cause." *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 652 (Miss. 2009) (citing cases from Tennessee, Washington, Indiana, Alabama, and the Eastern District of Kentucky); *see also Gaines v. Comanche Cnty. Med. Hosp.*, 143 P.3d 203, 216 (Okla. 2006) (allowing a nurse to testify as to the cause of bedsores but noting that the "nurse [was not] giving expert testimony against a physician"). *But see Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202, 1212 (Pa. 2009) ("[A]n otherwise competent and properly qualified nurse [may give] expert opinion testimony regarding medical causation . . . ."). The logic behind the rule is that nurses generally are not licensed to diagnose patients. Because nurses do not determine the medical cause of patients' symptoms, they will not have the required expertise to testify about causation.

But this Court does not need to resolve that question because even if Kentucky law allows LaMarre to testify as to causation, she is not qualified to do so. Hamilton was admitted to the Pikeville Medical Center and diagnosed with a series of problems including: kidney failure, muscle deterioration, high blood sugar, hematomas, high blood pressure, and an altered mental state. R. 44-2 at 6. LaMarre is not qualified to

8

testify as to the cause of these illnesses for the same reason she is not qualified to testify as to the standard of care. Hamilton has not established that she has experience, remote or recent, diagnosing these specific illnesses. Therefore Hamilton has not met—or even made any real effort to meet—his burden of proving that LaMarre's testimony as to causation is admissible.

## CONCLUSION

Accordingly, it is **ORDERED** that the medical defendants' motion *in limine*, R. 44, is **GRANTED**. Madeline LaMarre may not testify about 1) whether Dr. Waldridge breached the standard of care and 2) whether the medical staff's actions caused a specific medical condition.

This the 17th day of December, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge